ELECTRONICALLY FILED
2019 Aug 12 PM 2:58
CLERK OF THE WYANDOTTE COUNTY DISTRICT COURT
CASE NUMBER: 2019-CV-000606

**EXHIBIT "A"**

HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2216
Telephone: (316) 265-7741
Facsimile: (316) 267-7803

IN THE TWENTY-NINTH JUDICIAL DISTRICT
DISTRICT COURT, WYANDOTTE COUNTY, KANSAS
CIVIL DEPARTMENT

LARRY MARTEZ JAMES,

                Plaintiff,

vs.                                                                                    Case No.

ELECTRONIC SENTENCING ALTERNATIVES, INC.,
d/b/a ELECTRONIC SENTENCING ALTERNATIVE,
d/b/a/ ESA,
and ALCOHOL MONITORING SYSTEMS, INC.,
d/b/a SCRAM SYSTEMS,

                Defendants.

## PETITION

COMES NOW the plaintiff, Larry Martez James, by and through his counsel of record, and, for his cause of action against the defendants, states as follows:

1. The plaintiff, Larry Martez James, resides at 2926 N. Baltimore St., Kansas City, Wyandotte County, KS 66104.

2. Defendant Electronic Sentencing Alternatives, Inc. ("ESA") is a private Missouri corporation with its office located at 1000 NW South Outer Rd., Blue Springs, MO

64015, and may be served with process through its registered agent, Denise Welch-Masters.

3. Defendant Alcohol Monitoring Systems, Inc. ("AMS") is a Delaware corporation with its office located at 1241 W. Mineral Ave., Ste. 200, Littleton, CO 80120, and may be served with process through its registered agent, The Corporation Company, 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112-1268.

4. This Court has personal jurisdiction over the defendants pursuant to K.S.A. 60-308(b)(1)(B), K.S.A. 60-308(b)(1)(E), and K.S.A. 60-308(b)(1)(G)(ii).

5. The plaintiff's cause of action arose in Wyandotte County, Kansas; therefore, venue is appropriate in this judicial district.

## The Relationship and Activities of the Defendants

6. Defendant AMS is the manufacturer of a device known as the SCRAM Cam bracelet. The purpose of a SCRAM Cam bracelet is to provide continuous transdermal alcohol testing, which detects whether the wearer has consumed alcohol. The bracelet is attached to the wearer by a band around the wearer's ankle.

7. In order to profit from its SCRAM Cam bracelets, AMS enters into partnerships with entities that supply the bracelets directly to the persons who will be wearing them. Such partnership entities also install and monitor the bracelets.

8. AMS also does business under the name "SCRAM Systems" and maintains a SCRAM Systems website on which it advertises SCRAM Cam bracelets and solicits for partners to distribute its products.

9. AMS states that its partners are "governed by strict policies and procedures from AMS," and that AMS "works as an extension" of its partners." The control AMS asserts over its partners forms the basis for a principal-agent relationship between AMS and its partners.

10. AMS advertises that it provides "dynamic training" to its partners, and the SCRAM Systems website maintained by AMS contains a certain "Health and Safety Notice for SCRAM Systems Products," under which are listed "Precautions and Instructions for Installers," which are directed to partners of AMS regarding the installation of SCRAM Cam bracelets. Such "Precautions and Instructions" include the following language:

> **Do not install SCRAM Systems bracelets too tightly. The wearer should easily be able to insert their fingers between the bracelet and skin in order to clean underneath**.

11. At all times relevant herein, defendant ESA was a partner of AMS. In fact, ESA advertises itself as a "preferred partner" of AMS and, as such, distributes, installs, and monitors SCRAM Cam bracelets.

**Events Giving Rise to the Plaintiff's Injuries**

12. On or about August 4, 2017, plaintiff Larry Martez James entered into a written contract with defendant ESA, such contract titled "SCRAM Program Participant Agreement." This Agreement was formally executed by both the plaintiff and an ESA representative. Under the Agreement, ESA agreed to provide to the plaintiff a

SCRAM Cam bracelet to be worn by the plaintiff pursuant to the terms of his release from custody in Platte County, Missouri.

13. On or about the date that the plaintiff entered into the contract with ESA, a representative of ESA installed a SCRAM Cam bracelet on the plaintiff's left ankle.

14. ESA was fully aware of the instruction and precaution, quoted in paragraph 10, above, against installing SCRAM Cam bracelets too tightly, and, in fact, the same "Precautions and Instructions" that appear on the SCRAM Systems website were included in the SCRAM Program Participant Agreement executed by the plaintiff and ESA.

15. At the time the SCRAM Cam bracelet was installed, the plaintiff informed the ESA representative that the bracelet was too tight. The representative then loosened the bracelet slightly.

16. However, the bracelet remained far tighter on the plaintiff's leg than instructed by AMS. The bracelet was so tight that the plaintiff could barely get the tips of his fingers between the bracelet and his skin, the bracelet ground into his skin when he walked, and he frequently experienced the sensation of blood being cut off to his left foot.

17. Several days after the bracelet was installed, the plaintiff met with another ESA representative. At that time, the plaintiff again stated that the SCRAM Cam bracelet was too tight. However, the ESA representative refused to address the problem.

18. On August 15, 2017, the plaintiff was operating a motorcycle in Wyandotte County, Kansas, when, while lawfully passing through an intersection, he was struck by an automobile that ran a red light. At that time, the plaintiff was still wearing the SCRAM Cam bracelet and, due to the negligent, defective, and unreasonably dangerous manner in which the bracelet had been installed and allowed to remain on his leg, suffered a severe degloving injury to his left lower leg.

19. As a result of the degloving injury to the plaintiff's leg, as well as medical complications caused by such injury, the plaintiff has undergone extensive medical care and treatment and will undergo extensive medical care and treatment in the future; will eventually suffer the loss of his left leg below the knee and will require the use of prosthetics; has undergone past pain, suffering, disability, and disfigurement and will undergo future pain, suffering, disability, and disfigurement; has suffered past emotional damage and will suffer future emotional damage; and has suffered past economic loss and will suffer future economic loss, as well as other damages.

## **Theories of Recovery**

20. For the purpose of this paragraph and all of those that follow, the statements set forth in paragraphs 1 through 19, above, are incorporated by reference herein.

### Negligence

21. Defendant ESA had a duty to install the SCRAM Cam bracelet in a manner that was safe for the plaintiff and consistent with ordinary care, and which would not cause or

unnecessarily increase the likelihood of harm to the plaintiff. ESA further had a duty to install the bracelet in a manner consistent with the "Precautions and Instructions" provided by AMS. In addition, ESA had a duty to adjust the tightness of the bracelet consistent with the manner in which the bracelet should have initially been installed.

22. ESA breached all of the duties described in paragraph 21, above.

23. The breach of the above-described duties by ESA constitutes negligence on the part of ESA and proximately caused the plaintiff's severe degloving injury. Absent the negligence of ESA, the plaintiff's degloving injury would not have occurred.

24. Defendant ESA was the agent and partner of defendant AMS and, in accordance with both such principal-agent and partnership relationships, AMS bears vicarious liability for the negligence of ESA.

25. As a result of the defendants' negligence, the plaintiff has sustained injuries and damages as described above, all in an amount in excess of $75,000.

Product Liability: Defective Installation

26. This action concerns harm caused by the defective installation of a product and, as such, constitutes a "product liability claim" as such is defined by K.S.A. 60-3302(c).

27. The above-described injuries and damages suffered by the plaintiff were the result of a condition caused by the defective installation of the SCRAM Cam bracelet on the plaintiff's leg by ESA.

28. The SCRAM Cam bracelet, as defectively installed by ESA, was unreasonably dangerous, and such unreasonably dangerous condition existed at the time the bracelet left the control of ESA.

29. On two occasions, the plaintiff requested that ESA alleviate the defective condition of the bracelet by loosening it, but on neither occasion did ESA take appropriate action, and the defective and unreasonably dangerous condition of the bracelet was knowingly allowed by ESA to continue to exist, even after the bracelet left the control of ESA.

30. The actions and inactions of ESA in creating the defective and unreasonably dangerous condition of the bracelet, and in allowing such condition to continue, both constitutes negligence and gives rise to strict liability in tort.

31. The unreasonably dangerous condition of the bracelet, caused by the defective installation of ESA, caused the injuries that the plaintiff suffered in the aforesaid accident to be enhanced over and above the injuries that the plaintiff would have suffered had the bracelet been properly installed, thus resulting in all of the injuries and damages previously described.

32. Defendant ESA was the agent and partner of defendant AMS and, in accordance with both such principal-agent and partnership relationships, AMS bears vicarious liability for the unreasonably dangerous condition of the SCRAM Cam bracelet as caused by ESA.

33. As a result of the defendants' defective installation of the SCRAM Cam bracelet, the plaintiff has sustained injuries and damages as described above, all in an amount in excess of $75,000.

## Product Liability: Defective Design

34. AMS was the manufacturer of the SCRAM Cam bracelet involved in this case and was involved in the business of producing and distributing such bracelets.

35. At all times relevant herein, ESA was in the business of supplying SCRAM Cam bracelets to the public at large, and ESA provided the SCRAM Cam bracelet involved in this case to the plaintiff.

36. The SCRAM Cam bracelet manufactured by AMS and provided by ESA to the plaintiff was defectively designed in that the bracelet contained no mechanism for loosening or releasing itself in the event the bracelet was installed too tightly or became subject to violent forces or other circumstances which might cause severe injury to the wearer. The bracelet was further defective in that it was designed to be placed upon and fastened around the wearer's leg by a strap which would foreseeably subject the wearer to a degloving or other serious injury in the event the wearer's leg were to encounter such violent forces. As such, the SCRAM Cam bracelet was unreasonably dangerous to those who would foreseeably use the product.

37. Such design defect existed at the time the SCRAM Cam bracelet left the control of AMS and likewise existed when the bracelet was provided to the plaintiff by ESA.

38. The product, as defectively designed by AMS and supplied to the plaintiff by ESA, caused the injuries that the plaintiff suffered in the aforesaid accident to be enhanced over and above the injuries that the plaintiff would have suffered had the bracelet been properly designed, thus resulting in all of the injuries and damages previously described.

39. As a result of the defective design of the SCRAM Cam bracelet, as well as the distribution of such bracelet by ESA, the defendants are responsible to the plaintiff in strict product liability, and the plaintiff has sustained injuries and damages as described above, all in an amount in excess of $75,000.

<u>Breach of the Implied Warranty of Merchantability</u>

40. Pursuant to a contract between ESA and the plaintiff, ESA supplied the aforesaid SCRAM Cam bracelet to the plaintiff.

41. A warranty of merchantability was implied in the aforesaid contract.

42. AMS, as a partner with ESA and as the principal for whom its agent, ESA, was acting, was responsible for and was bound by the contract made by ESA with the plaintiff.

43. The SCRAM Cam bracelet that was the subject of the contract was defective as described in paragraph 36, above, and was therefore not fit for the ordinary purpose for which it was meant to be used.

44. The bracelet was defective when it left the control of AMS and was in the same defective condition when ESA provided it to the plaintiff.

45. By providing a defective SCRAM Cam bracelet to the plaintiff, the defendants violated their implied warranty of merchantability, which caused the plaintiff's injuries and damages as described above, all of which are in excess of $75,000.

### Breach of Contract

46. As stated above, the plaintiff entered into a written contract with defendant ESA, which included specific instructions for the installation of the SCRAM Cam bracelet that the plaintiff was being provided. Such instructions constituted a term of the contract and an express contractual assurance to the plaintiff that the SCRAM Cam bracelet would be properly installed by ESA.

47. The improper installation of the SCRAM Cam bracelet on the plaintiff's leg constituted a breach of the aforesaid contractual term.

48. ESA entered the contract with the plaintiff for its own benefit and, as an agent and partner of AMS, also entered such contract on behalf of AMS.

49. As a consequence of the above-described agency and partnership relationships between ESA and AMS, the conduct of ESA in breaching its contract with the plaintiff was likewise a breach by AMS.

50. The aforesaid contractual breach resulted in the plaintiff suffering the injuries and damages described above, all of which are in excess of $75,000.

### Loss of Consortium

51.  At all times relevant herein, the plaintiff was lawfully married to Becky June James, who resides with the plaintiff at the address aforesaid.

52. As a result of the injuries described herein, the plaintiff has suffered a loss and impairment of his ability to perform services in the household and to discharge his domestic duties, and thus brings a claim in this action, for the benefit of his spouse, for the recovery of all damages allowed by K.S.A. 23-205 and for loss of consortium pursuant to Kansas common law, the amount of such damages being in excess of $75,000.

Therefore, the plaintiff, Larry Martez James, prays for judgment against the defendants on the claims set forth above, together with his costs incurred herein, and for such other and further relief as the Court may deem just and proper.

          HITE, FANNING & HONEYMAN L.L.P.

          By /s/Vince P. Wheeler
             Vince P. Wheeler, SC#12502
             wheeler@hitefanning.com
             Bradley J. LaForge, SC#20323
             laforge@hitefanning.com
             HITE, FANNING & HONEYMAN L.L.P.
             100 N. Broadway, Ste. 950
             Wichita, KS 67202-2216
             Telephone: (316) 265-7741
             Facsimile: (316) 267-7803
             *Attorneys for plaintiff Larry Martez James*

## **DEMAND FOR JURY TRIAL**

Comes now the plaintiff, Larry Martez James, by and through his counsel of record, and demands a trial by a jury of 12 persons in the above-entitled matter.

                HITE, FANNING & HONEYMAN L.L.P.

By /s/Vince P. Wheeler
   Vince P. Wheeler, SC#12502
   wheeler@hitefanning.com
   Bradley J. LaForge, SC#20323
   laforge@hitefanning.com
   HITE, FANNING & HONEYMAN L.L.P.
   100 N. Broadway, Ste. 950
   Wichita, KS 67202-2216
   Telephone: (316) 265-7741
   Facsimile: (316) 267-7803
   *Attorneys for plaintiff Larry Martez James*